DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

THEODORE COHEN,

      Plaintiff,

      v.                                      Civil Action No. 2011-0077

ESTATE OF GABRIEL LIONEL,

      Defendant.

**Attorneys:**
**Eric S. Chancellor, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Scot F. McChain, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant*

**Renee D. Dowling, Esq.,**
St. Croix, U.S.V.I.
    *For Purchaser, Mr. Jawad Idheileh*

## MEMORANDUM OPINION

THIS MATTER comes before the Court in this debt and foreclosure action on the "Motion for Distribution of Proceeds of Foreclosure Sale" filed on September 7, 2015 by Plaintiff Theodore Cohen ("Cohen") (Dkt. No. 52), and the "Motion and Memorandum of Law to Vacate Sale and Allow Redemption" filed on September 17, 2015 by Defendant Estate of Gabriel Lionel (the "Estate"). (Dkt. No. 54). Also before the Court is the issue regarding the amount of reimbursement that the purchaser of the property at the foreclosure sale, Jawad Idheileh ("Idheileh"), is due, which was raised in his "Opposition to Notice of Redemption and Certificate of Redemption" filed on November 20, 2015. (Dkt. No. 56). The Court heard argument on these motions on January 15,

2016. Following the hearing, and pursuant to Court Order, counsel for the Estate and Idheileh filed a "Stipulation of Counsel as to Calculation of Purchaser's Reimbursement upon Redemption" (Dkt. No. 61), and counsel for Cohen and the Estate filed a "Stipulation for Calculation of Amount Owing to Plaintiff." (Dkt. No. 62).

On January 28, 2016, the Court issued an Order directing the Clerk of Court to liquidate the certificates of deposit in which the funds in this case had been deposited and deposit the funds in the Court Registry in preparation for the distribution of proceeds. (Dkt. No. 63).

For the reasons that follow, the Court will deny as moot Cohen's Motion for Distribution of Proceeds in view of the parties' recent Stipulation; grant in part and deny in part the relief requested in the Estate's Motion to Vacate Sale and Allow Redemption; and order the distribution of proceeds of the foreclosure sale as set forth below.

## I.   BACKGROUND

On June 25, 2014, Cohen and the Estate filed what was described on the docket as a "Motion to Approve Consent Judgment for Debt and Foreclosure." (Dkt. No. 31). This proposed Consent Judgment provided that the parties agreed that the Estate was indebted to Cohen for $289,279.18 as of June 23, 2014 "as reflected in the statement attached as Exhibit 1." *Id.* Exhibit 1, an "Affidavit of Theodore Cohen in Support of Consent Judgment," provided that: the principal amount due and owing as of June 23, 2014 was $250,000.00; accrued interest at 15% per annum was due, totaling $28,953.22, which continued to accrue at $102.74 per day until the date of judgment; the amount of fees and costs incurred as of June 23, 2014 was $10,325.96; and "the total amount of monies due to [Cohen] as of June 23, 2014 is $289,279.18, together with daily interest on the principal of $102.74 until the day of judgment, and at the legal rate (4%) thereafter." (Dkt. No. 31-1).

The proposed Consent Judgment further provided that, if the Estate did not pay the debt by September 21, 2014, the Consent Judgment would become effective as of that date and Cohen could proceed with collection of the debt, including by means of foreclosure of the property at issue. (Dkt. No. 31). The proposed Consent Judgment was approved and entered as an Order of the Court on June 26, 2014. (Dkt. No. 32). On September 25, 2014, Cohen's attorney informed the Court that the debt was not paid (Dkt. No. 34) and filed a Praecipe for Writ of Execution (Dkt. No. 35). The writ of execution issued on October 3, 2014. (Dkt. No. 36).

On April 23, 2015, Cohen filed a Motion for Order Confirming Sale of the property. (Dkt. No. 43). Attached to the Motion was a Report of Sale by the U.S. Marshal which stated that an auction was held on February 26, 2015, at which time the property at issue was offered for sale. (Dkt. No. 43-1). The Report further stated that Idheileh made the final bid of $465,000.00, which was paid in full, for the property. *Id.*

On May 28, 2015, the Court granted Cohen's Motion for Order Confirming Sale. (Dkt. No. 47). The Order provided that Idheileh—the high bidder for the property—submitted a total bid of $465,000.00. *Id.* After noting that no one had objected to the sale, the Order directed the Marshal to deliver a Certificate of Sale to Idheileh indicating the terms of sale and providing that the property was subject to a six-month redemption period from the date of the Order Confirming Sale. *Id.* The Order Confirming Sale further provided that if the Estate redeemed the property within the redemption period, it would have to pay the amount of the purchase money, with interest at the legal rate from the date of sale, together with any taxes that Idheileh may have paid after purchase, pursuant to 28 V.I.C. § 535. *Id.*

On September 7, 2015, Cohen filed the instant Motion for Distribution of Proceeds of Foreclosure Sale in which he requested that the Court enter an Order of Distribution to him for the

3

following sums: Judgment in the amount of $289,279.18; interest dating from the Judgment until the date of sale of $13,473.06; attorney's fees and costs in the amount of $4,430.16 (as indicated in an attached affirmation of counsel in support of costs and fees); and a total amount due of $307,182.40. (Dkt. No. 52). Cohen also requested interest at the per diem rate of $27.40, accruing from February 27, 2015 (the day after the sale) until the date the Judgment was paid. *Id.* The Estate filed a Notice of No Objection to the Motion for Disbursement of Funds. (Dkt. No. 53).

On September 17, 2015, the Estate moved to vacate the foreclosure sale and any Marshal's Deed issued to Idheileh, and to allow the Estate to exercise its right of redemption. (Dkt. No. 54). The Estate stated that the Court's May 28, 2015 Order Confirming Sale provided that the Estate could exercise its right to redeem the property within six months from the date of the Order Confirming Sale by paying the total purchase price as of the date of redemption, including principal, interest, attorney's fees, court costs and costs of sale. *Id.* (citing Dkt. No. 47). The Estate asserted that it had paid $487,047.76 to the U.S. Marshal on August 19, 2015 to redeem the property—an amount "in excess of the purchase price . . . [that] was agreed to by the Parties." *Id*[1].

On November 17, 2015, the Estate filed a "Notice of Redemption," informing the Court that it had redeemed the property. (Dkt. No. 55). The Estate attached as an exhibit a Certificate of Redemption signed by the U.S. Marshal on September 30, 2015. (Dkt. No. 55-1). The Certificate of Redemption provided that the Estate paid the "agreed upon sum" of $487,047.76 "representing the amount that Theodore Cohen has agreed to accept in full and complete Satisfaction of its rights to the property[.]" *Id.*

---

[1] Attached as exhibits to the motion were two receipts: one dated August 11, 2015 from "Emile Holdings, LLC" for $318,604.90, and the second receipt dated August 19, 2015 from Emile Holdings LLC for $168,442.86. (Dkt. No. 54-2). The two receipts support the representation that a total of $487,047.76 was paid for redemption of the property in this case.

Three days later, on November 20, 2015, Idheileh filed an "Opposition to Notice of Redemption and Certificate of Redemption," in which he argued that: (1) the Certificate of Redemption, filed on November 17, 2015, made no mention of his payment of the purchase price together with interest at the legal rate which he is due; (2) he paid $471,990.00 for the property at the sale, and the "law demands that he be reimbursed his full purchase price plus interest at the legal rate of 4% per annum from the date of the sale"; and (3) there has been "no showing that the judgment debtor has deposited funds sufficient to satisfy the reimbursement of [his] purchase price plus interest to him over and above the sum that Theodore Cohen agreed to accept as satisfaction for his debt," and therefore the redemption violates Virgin Islands law. (Dkt. No. 56). He asserted that he should be reimbursed the full amount paid of $471,990.00—which represents the $465,000.00 purchase price plus the $6,990.00 Commission he paid to the U.S. Marshals Service—plus interest at the legal rate of 4% per annum from the date of the sale. *Id.*

On December 8, 2015, the Estate filed a "Reply to Purchaser's Opposition to Estate's Motion to Vacate Sale and Allow Redemption" in which it argued that Idheileh's Opposition was filed out of time and, alternatively, that the post-judgment interest rate should be calculated at the federal rate, pursuant to 28 U.S.C. § 1961 (at 0.12%), rather than at the local rate of four percent per annum, pursuant to 5 V.I.C. § 426. (Dkt. No. 57).

The Court held a hearing on January 15, 2016 during which counsel for the Estate, Cohen, and Idheileh set forth their respective positions on the amounts to be disbursed to Cohen and Idheileh, with the remainder to be disbursed to the Estate. Counsel for Cohen and the Estate agreed on the amount to be disbursed to Cohen, and filed a Stipulation setting forth that amount due as of January 15, 2016: $316,135.34. (Dkt. No. 62).

At the hearing, counsel for Idheileh first queried whether the Court had jurisdiction over this case, asserting that there was no federal question or diversity jurisdiction in light of the dismissal of the United States from this action.

With regard to the amount Idheileh should be reimbursed, counsel for Idheileh contended that the "purchase money" to be reimbursed—and upon which post-sale interest would accrue—consisted of both the $465,000.00 Idheileh paid for the property, plus the $6,990.00 commission that he paid to the U.S. Marshals Service to conduct the sale. Counsel for the Estate countered that the "purchase money" to be reimbursed and upon which interest would accrue was only the $465,000.00 that Idheileh paid for the property. The Estate agreed that Idheileh would be entitled to be reimbursed for the $6,990.00 commission, but that he was not entitled to interest on that amount.

Counsel for the Estate and Idheileh also disagreed on whether the post-sale interest rate Idheileh would receive on the "purchase money" would be four percent, as set forth in 5 V.I.C. § 426, or 0.12%, as set forth in 28 U.S.C. § 1961(a).

Following the hearing, counsel for the Estate and Idheileh, in accordance with the Court's Order, submitted a Stipulation with four sets of alternate figures where they calculated $465,000.00 with interest at four percent and at 0.12%, and $471,990.00 with interest at four percent and at 0.12%. (Dkt. No. 61). This provided the Court with agreed-upon amounts for the various scenarios, depending on how the Court defined "purchase money" and which interest rate it found applicable. (Dkt. No. 61).

## II.    DISCUSSION

**A. Jurisdiction**

Federal courts must be satisfied "'that federal subject matter jurisdiction exists in the first instance.'" *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 357 n.1 (3d Cir. 2015) (quoting *Kaufman v. Allstate N.J. Ins. Co.,* 561 F.3d 144, 151 (3d Cir. 2009)).

This case was originally filed in the Superior Court of the Virgin Islands by Cohen against the Estate and the United States of America (Internal Revenue Service). (Dkt. No. 1-2). The United States, as a Defendant, properly removed the action to this Court pursuant to 28 U.S.C. § 1444 (permitting removal from state court if plaintiff seeks foreclosure against the United States). (Dkt. No. 1).[2] Almost three years later, the United States was dismissed from the action by Stipulation of Dismissal. (Dkt. Nos. 24, 25).

In *Dixie Brewing Co., Inc. v. Dep't of Veterans Affairs*, 2013 U.S. Dist. LEXIS 177468 (E.D. La. Dec. 18, 2013), the district court considered whether removal pursuant to 28 U.S.C. § 1442 by a federal defendant—the Department of Veterans Affairs—had been proper.[3] The court observed that § 1442 permitted a federal agency sued in state court to remove the action "even

---

[2] Title 28 U.S.C. § 1444, entitled "Foreclosure action against United States," provides: "Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending." Section 2410, in turn, provides that the United States "may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—(2) to foreclose a mortgage or other lien upon . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(2).

[3] The pertinent provision of 28 U.S.C. § 1442 provides: "A civil action. . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer . . . of the United States or of any agency thereof . . . for or relating to any act under color of such office . . ." 28 U.S.C. § 1442(a)(1).

though the federal district court would not have otherwise had subject matter jurisdiction." *Id.* at *10. The court found that removal was proper, as it allowed "removal of the entire case, not just the claims against the federal officer or agency." *Id.* at *13 (citing *IMFC Prof. Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 158 (5th Cir. 1982)). Significantly, the court further concluded: "Where a suit against a federal agency is properly removed but the agency is then dismissed, '§ 1442(a)(1) through its creation of an ancillary jurisdiction, confers *discretion* on the district court to decline to exercise continued jurisdiction.'" *Id.* at *13-*14 (quoting *IMFC*, 676 F.2d at 156) (emphasis added).

In *IMFC*, the Fifth Circuit discussed the effect on a federal court's jurisdiction where a lawsuit was removed from state court based on the fact that a federal agency was named as a defendant, and that agency was later eliminated from the case. The court noted that 28 U.S.C. § 1441(a) authorizes removal of an entire case, even though only one of its controversies might involve a federal officer or agency, and that § 1441(a) created "a species of ancillary jurisdiction over the nonfederal elements of the case." *IMFC*, 676 F.2d at 158.[4] The court observed that "elimination of the 'principal' controversy in a case does not deprive the court of power to dispose of the ancillary matters even though the court would not have had jurisdiction over these matters but for ancillarity," and pointed out that "the law is uniform that ancillary counterclaims may be considered after the main claim has been disposed of." *Id.* at 158-59. The court found that doctrine applicable in the case before it as well, and also noted that the policy favored the retention of jurisdiction, since a federal officer (or agency) "may be eliminated from a case at any time, even

---

[4] Title 28 U.S.C. § 1441, entitled "Removal of civil actions," provides, in pertinent part: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

after trial." *Id.* at 159 (citing cases); *see also State of N.J. Dep't of Env. Protection v. Gloucester Env. Mgmt. Servs., Inc.*, 719 F. Supp. 325, 334 (D.N.J. 1989) ("When an action is properly removed pursuant to section 1442(a)(1), a federal court can exercise ancillary jurisdiction over the entire controversy. . . . If a court dismisses the federal defendant from such a case, it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims.") (citing cases). Thus, if a case is properly removed, and the basis for that removal—the federal defendant—is dismissed after removal is effected, the district court is charged with exercising its discretion as to whether it will continue to exercise jurisdiction over the case.

The reasoning in these cases obtains here as well. The instant case was properly removed to District Court pursuant to 28 U.S.C. § 1444. Once the federal Defendant—the IRS—was dismissed three years after removal, the District Court retained "ancillary jurisdiction" over the local claims.[5] Given that the jurisdictional issue was raised by the purchaser at the end of a long road of litigation where all that remains is for funds to be disbursed, the Court elects to retain jurisdiction to bring this matter to a conclusion.

### B. Distribution of Proceeds of Foreclosure Sale

The documents filed in this case indicate that Idheileh paid $465,000.00 to the Court to purchase the property (Dkt. No. 47) and $6,990.00 to the U.S. Marshals Service as a commission for the sale, and that the Estate paid a total of $487,047.76 to the Court to redeem the property. (Dkt. No. 55-1). Thus, $952,047.76 was deposited with the Court in relation to this property.[6] In

---

[5] This Court perceives no discernible basis for distinguishing among the removal statutes (28 U.S.C. §§ 1441-1444) with regard to the application of this legal principle.

[6] The $6,990.00 Marshals Service commission remains with the Marshals Service. It was not, therefore, included in the amount deposited in the Court Registry. However, because the Estate

addition, the certificates of deposit earned $356.16 in interest until they were liquidated, yielding a total amount in the Court Registry of $952,403.92 that is available for distribution.

### 1. Plaintiff Theodore Cohen

In the "Stipulation for Calculation of Amount Owing to Plaintiff" (Dkt. No. 62), Cohen and the Estate agreed on the amount to be disbursed to Cohen, as follows:

1. Amount due as of June 23, 2014      $289,279.18

2. Per diem interest from June 24, 2014 through Sept. 21, 2014 (90 days at $102.74/day)      9,246.60

3. Per diem interest from Sept. 22, 2014 through Jan. 15, 2016 (481 days at $27.40/day)      13,179.40

4. Costs and Attorney's Fees      4,430.16

SUB-TOTAL DUE as of January 15, 2016      $316,135.34

The parties note that "interest continues to accrue at the rate of $27.40 until paid." *Id.* Accordingly, the Court will add $ 1,507.00 in per diem interest from January 16, 2016 until the date of this Order (March 10, 2016) (55 days at $27.40 per day).

5. Per diem interest from Jan. 16, 2016 through March 10, 2016 (55 days at $27.40/day)      1,507.00

**TOTAL DUE TO PLAINTIFF**      **$317,642.34**[7]

---

must reimburse Idheileh for paying the Marshals Service commission in order to make him whole, that amount will be included in Idheileh's disbursement, and the Estate will concomitantly receive $6,990.00 less from the Court Registry.

[7] The funds will be available on the date this Order issues, which therefore represents the date through which the per diem interest will be calculated.

In view of Cohen's and the Estate's Stipulation (Dkt. No. 62), the Court will deny as moot Cohen's "Motion for Distribution of Proceeds of Foreclosure Sale." (Dkt. No. 52).

### 2. Purchaser of the Property, Jawad Idheileh

Idheileh purchased the property at the foreclosure sale on February 26, 2014. In his "Opposition to Notice of Redemption and Certificate of Redemption," Idheileh argues, *inter alia*, that he should "be reimbursed his full purchase price plus interest at the legal rate of 4% per annum from the date of the sale." (Dkt. No. 56). The Estate responds that Idheileh's Opposition was untimely but, in any event, the federal interest rate of 0.12%, based on the Federal Reserve's Interest Rate Release of September 19, 2014, should be used rather than the 4% interest rate. (Dkt. No. 57). At the hearing, Idheileh contended that the purchase money on which his interest should be calculated is $471,990.00 (the $465,000.00 paid for the property plus the $6,990.00 commission paid to the U.S. Marshals Service). The Estate countered that the purchase money upon which interest should be calculated should be only the $465,000.00 that Idheileh paid for the property.

### a. Purchase Money

Title 28, Section 535 of the Virgin Islands Code discusses how property sold in a foreclosure sale may be redeemed. It states:

> The judgment debtor . . . on paying the amount of the *purchase money*, with interest at the legal rate per annum thereon from the date of sale, together with the amount of any taxes which the purchaser may have paid thereon after purchase, shall redeem within six months after the order of confirmation of sale.

28 V.I.C. § 535 (emphasis added). In a similar vein, 5 V.I.C. § 496 provides:

> The judgment debtor . . . may redeem the property at any time prior to the confirmation of sale on paying the amount of the *purchase money*, with interest at the legal rate per annum thereon from the date of sale, together with the amount of any taxes which the purchaser may have paid thereon after purchase.

5 V.I.C. § 496 (emphasis added). The term "purchase money" is not defined in either statute.

There is little guidance concerning the definition of "purchase money," and the parties provided no legal authority in support of their respective positions. Black's Law Dictionary (10th ed. 2014) defines "purchase money" as "[t]he initial payment made on property secured by a mortgage."[8] In contrast, Black's Law Dictionary defines "purchase price" as "[t]he price actually paid for something, esp. a house." The fact that there is a distinction between the definitions of "purchase money" and "purchase price" is of assistance in resolving the issue presented here. On the one hand, "purchase price" is defined as the actual, specific price paid for something. On the other hand, "purchase money" involves a "payment" made to acquire something. By implication, such a payment could include more than just the "purchase price." The Court finds such an interpretation of the term "purchase money" to be reasonable.

Here, in order to purchase the property, Idheileh was required to pay not only the price he bid for the property, $465,000.00, but also the $6,990.00 commission that the U.S. Marshals Service requires in order to conduct the foreclosure sale. *See* 28 U.S.C. § 1921(c)(1) (authorizing Marshal's commission for disposing of property by judicially ordered sale). The Marshals Service is paid "for seizing or levying on property" and "disposing of such property by sale" as part and parcel of the foreclosure sale. *Id.* Thus, it is appropriate for the "purchase money" in this situation to consist of the $465,000.00 "purchase price" plus the $6,990.00 commission, for a total of $471,990.00.

The applicable Virgin Islands statutes cited above which govern redemption—28 V.I.C. § 535 and 5 V.I.C. § 496—provide that a redeeming party can redeem "on paying the amount of the purchase money," not "on paying the amount of the purchase price." In this regard, "courts must

---

[8] Black's Law Dictionary also defines a "purchase-money mortgage" as "[a] mortgage that a buyer gives the seller, when the property is conveyed, to secure the unpaid balance of the purchase price." Black's Law Dictionary (10th ed. 2014).

presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). The Court therefore concludes that, in this context, the Legislature's use of the term "purchase money" was intended to include both the purchase price for the property and the Marshals Service commission.

Based on the Court's conclusion that the "purchase money" in this instance is comprised of the $465,000.00 purchase price, plus the $6,990.00 Marshals Service commission, the Court will award interest on the total amount of $471,990.00, from the date of sale through the date of this Order.[9]

### b. Interest Rate

As noted above, the Order Confirming Sale provides, in accordance with the applicable statutory law, that if the Estate redeems the property within the six-month time frame, it must pay "the amount of the purchase money, with interest at the legal rate per annum thereon from the date of sale" and any taxes the purchaser may have paid after purchase. (Dkt. No. 47).[10]

The issue presented is: what is "interest at the legal rate per annum"? The Estate claims that Idheileh's post-judgment rate of interest is not 4% per annum, as provided in 5 V.I.C. § 426, but 0.12% per annum as provided in 28 U.S.C. § 1961.[11] Idheileh argues to the contrary.

---

[9] This conclusion is supported not only by the analysis above, but by what simple logic would seem to dictate. By paying $471,990.00 in order to acquire the property, Idheileh was denied the interest he could have otherwise earned on both the $465,000.00 purchase price as well as the $6,990.00 commission.

[10] No taxes were alleged to have been paid by Idheileh.

[11] The Estate cites *Bank of Nova Scotia [Eberhart] v. Riviere*, Civ. No. 2011-020 (D.V.I. Dec. 12, 2014), *Condus v. Howard Sav. Bank,* 999 F. Supp. 594 (D.N.J. 1998), and *Pierce Assoc., Inc. v. Nemours Found.*, 865 F.2d 530 (3d Cir. 1988) in support. The court in *Condus* stated, without further discussion, that "[a]lthough state law provides for Plaintiffs' right to prejudgment interest, federal law, specifically 28 U.S.C. § 1961, provides for post-judgment interest." 999 F. Supp. at 599. In *Pierce Assoc.*, the Third Circuit observed that, "notwithstanding that this is a diversity

Title 5 of the Virgin Islands Code, Section 426, provides that "[t]he rate of interest on judgments and decrees for the payment of money shall be 4 percent per annum." 5 V.I.C. § 426(a). By contrast, 28 U.S.C. § 1961 provides:

> *Interest shall be allowed on any money judgment in a civil case recovered in a district court.* Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961(a) (emphasis added).

This civil action is taking place in a district court, as provided in 28 U.S.C. § 1961. While "money judgment" is not defined under the statute, in *Eaves v. Cnty. of Cape May*, 239 F.3d 527 (3d Cir. 2001), the Third Circuit defined this term in 28 U.S.C. § 1961(a) by importing the definition of the same term from 11 U.S.C. § 362(b):

> In common understanding, a money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for [the] plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being entered; and (2) a definite and certain designation of the amount which plaintiff is owed by defendant.

*Id.* at 533 (quoting *Penn Terra Ltd. v. Dep't of Env. Res.*, 733 F.2d 267, 275 (3d Cir. 1984)); *see id.* at 534 ("our construction of the phrase "any money judgment" in § 1961(a). . . requires that the judgment at issue award a fixed amount of fees to the prevailing party in order to trigger the post-

---

action," the post-judgment interest rate was governed by 28 U.S.C. § 1961. 865 F.2d at 548. The Court agrees that these cases espouse the general principle regarding the applicability of the federal post-judgment interest rate in diversity matters. However, for the reasons stated herein, the Court finds these cases do not address the precise situation here involving a purchaser's right to reimbursement following redemption pursuant to an Order Confirming Sale. The Court will address *Riviere, infra*.

judgment interest period."). The Third Circuit went on to say that whether the judgment was entered after a verdict had been rendered or as a result of the resolution of a motion did not matter for purposes of the statute. *Id.* at 535.

The only "money judgment" entered in this case is the September 2014 Consent Judgment. (Dkt. No. 32).[12] The Consent Judgment identified the parties for and against whom the judgment was entered—Cohen and the Estate—and contained a "definite and certain designation" of the amount owed Cohen by the Defendant. *See Eaves*, 239 F.3d at 533; Dkt. No. 32.[13]

However, Idheileh is not seeking interest based on the Consent Judgment, but based on the fact that he paid a certain sum to purchase property at a foreclosure sale held on February 26, 2015. His legal rights arose from the Order Confirming Sale which, *inter alia*, identified Idheileh as the purchaser; allowed the Estate six months to redeem the property; described the reimbursement Idheileh would receive *if* the property was redeemed; and described the kind of deed he would receive if the property was not redeemed. (Dkt. No. 47). Given this articulation of Idheileh's rights

---

[12] A plain reading of the federal statute leads to the conclusion that post-judgment interest pursuant to § 1961 is available with regard to that *specific* "money judgment," and that, if the statute applied, *Cohen* would be the party receiving post-judgment interest at that rate.

[13] It is important to note that Cohen received the 4% post-judgment interest only because that amount was explicitly agreed upon by Cohen and the Estate in the Consent Judgment. As a "Consent Judgment represents a settlement of the parties, its interpretation and enforcement are controlled by contract principles." *Christian v. All Persons Claiming any Right, Title or Interest in all Properties Known and Described as: All Properties Known as Newfound Bay*, 139 F. Supp. 2d 679, 684 (D.V.I. 2001), and courts regularly enforce such contractual terms. *See Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271 (3d Cir. 2004). Thus, Cohen was due a 4% post-judgment interest rate, and that is reflected in the accounting in section II(B)(1) above. Idheileh, as a stranger to the contract, cannot benefit from the Cohen-Estate agreement to claim a four percent post-judgment interest rate. The only way he would be due that interest is if the Virgin Islands statutory post-judgment interest rate applies, rather than the federal statutory rate.

in the Order Confirming Sale, the Court concludes that that it was that Order—not the Consent Judgment—that governs the monetary and other obligations between Idheileh and the parties.[14]

The Court further concludes that the Order Confirming Sale is not a "money judgment" as defined by the Third Circuit. It does not identify "the *parties* for and against whom judgment is being entered." *Eaves*, 239 F.3d at 533. Idheileh is not a party in this matter. Only Cohen and the Estate are parties. Nor does the Order Confirming Sale require the Estate to pay a "definite and certain . . . amount[.]" *Id.; see id.* at 535 (text of Order Confirming Sale is not "the functional equivalent of a judicial finding that the [Defendant] was liable to [Plaintiff] to pay a fixed sum[.]"). Indeed, there is nothing "definite" or "certain" about what Idheileh, a stranger to this action, is to receive because Idheileh will recoup his "purchase money" only *if* the Estate exercises its right of redemption *and* does so within six months of the date of the Order Confirming Sale. Accordingly, since the Order Confirming Sale is not a "money judgment," the federal statute does not apply to the post-sale interest Idheileh is to receive.

As indicated above, 5 V.I.C. § 426 is the local statute governing post-judgment interest. It provides that "[t]he rate of interest on judgments and decrees for the payment of money shall be 4

---

[14] The Court recognizes that this conclusion is at odds with the conclusion reached in *Bank of Nova Scotia v. Riviere*, 3:11-cv-20 (D.V.I. Dec. 12, 2014)—a Report and Recommendation which addressed the same issue involved here. In *Riviere,* the Magistrate Judge found that the judgment of foreclosure was the "operative judgment"—*i.e.*, the "money judgment"—and the source of "the opportunity" which enabled the Eberharts to purchase the property. Based on this reasoning, the Court concluded that because the source of the Eberharts' rights was the money judgment between the Bank and defendant, and post-judgment interest on money judgments in federal court diversity matters are governed by § 1961(a), then the federal interest statute applied. The Report & Recommendation was adopted in pertinent part by the District Court. (Dkt. No. 109 in 3:11-cv-0020). As discussed above, however, this Court finds that the "money judgment" (the Consent Decree) is not the operative document because the Order Confirming Sale sets forth Idheileh's legal rights as the purchaser. Based on this reasoning, together with the analysis discussed further below, this Court concludes that the local rather than federal statute governs the post-sale interest to which Idheileh is entitled.

percent per annum." 5 V.I.C. § 426(a). As defined by Black's Law Dictionary (10th ed. 2014), the term "decree" includes "*[a]ny court order,* but esp. one in a matrimonial case."

The Court finds that the Order Confirming Sale fits within the scope of a "decree" which encompasses "[a]ny court order." The Court therefore concludes that the Order Confirming Sale comes under the purview of 5 V.I.C. § 426(a) for purposes of calculating post-judgment interest. This conclusion is strengthened by the fact that all of the operative statutes governing the redemption process, and what is to be paid thereunder—as provided in the Order Confirming Sale and as followed by the Estate—are local statutes, and by the fact that the Order Confirming Sale is not a "money judgment" within the meaning of the federal post-judgment interest statute.

Accordingly, the Court concludes that Idheileh is due interest at the rate of four percent on the "purchase money" amount of $471,699.00. The Estate and Idheileh have stipulated that the "relevant period for calculating post judgment interest on the 'purchase money' is from the order confirming sale until the order of redemption." (Dkt. No. 61). The stipulated amount due Idheileh—$483,989.04—is arrived at as follows:

1. Purchase money                          $471,990.00

2. Per Diem Interest from Feb. 27, 2015 through Jan. 15, 2016 (232 days at $51.72/day)      <u>11,999.04</u>

3. SUB-TOTAL DUE as of January 15, 2016       $483,989.04

To this sum, the Court will add $2,844.60 in per diem interest from January 16, 2016 until the date of this Order (March 10, 2016) (55 days at $51.72 per day).

4. Per Diem Interest from Jan. 16, 2016 through March 10, 2016 (55 days at $51.72/day)           2,844.60

**TOTAL DUE TO PURCHASER**                **$486,833.64**

### 3. Distribution of the Remaining Sum in the Court Registry

As noted above, a total of $952,403.92 has been deposited into the Court Registry in this case. Pursuant to the distribution amounts, Cohen will receive $317,642.34, and Idheileh will receive $486,833.64, for a total of $804,475.98 in disbursements. Thus, $147,927.94 remains in the account. This figure represents the overpayment made by the Estate when it redeemed the property.

**OVERPAYMENT DUE TO ESTATE**            **$147,927.94**

### C. The Estate's Motion to Vacate Sale and Allow Redemption

Having redeemed the property, the Estate has moved to vacate the foreclosure sale and the Marshal's Deed issued to Idheileh, and to allow the Estate to exercise its right of redemption. (Dkt. No. 54). The Court will grant in part the Estate's motion, to the extent that it will vacate the foreclosure sale and the Marshal's Deed issued to Idheileh. The Court will deny in part the Estate's motion, to the extent that it sought to define "purchase money" as the $465,000.00 purchase price, and to the extent it argued that the federal statute providing post-sale interest of 0.12% applied.

### III. CONCLUSION

For the reasons set forth above, the Court will deny as moot Cohen's "Motion for Distribution of Proceeds of Foreclosure Sale" (Dkt. No. 52), in view of the Stipulation filed by Cohen and the Estate. The Court will grant in part the Estate's motion, to the extent that it will vacate the foreclosure sale and the Marshal's Deed issued to Idheileh. The Court will deny in part the Estate's motion, to the extent that it sought to define "purchase money" as the $465,000.00 purchase price, and to the extent it argued that the federal statute providing post-sale interest of 0.12% applied. (Dkt. No. 54). In accordance therewith, the Court will disburse the amounts in the Court Registry as follows:

(1) $317,642.34 to Theodore Cohen;

(2) $486,833.64 to Jawad Idheileh.

(3) $147,927.94 to the Estate of Gabriel Lionel.

The Clerk of Court will be directed to disburse these funds forthwith, which will be available on the date the Order which accompanies this Memorandum Opinion issues.

Date: March 10, 2016                                    _____/s/_____
                                                        WILMA A. LEWIS
                                                        Chief Judge